FILED

MAR 2 9 2017

JUDGE REBECCA R. PALLMEYER
UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RICHARD TINIMBANG | No. 14 CR 732 - 2<br><br>Judge Rebecca R. Pallmeyer |

## PLEA AGREEMENT

1. This Plea Agreement between the United States Department of Justice, Criminal Division, Fraud Section, and defendant RICHARD TINIMBANG, and his attorney, THEODORE POULOS, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2. The fourth superseding indictment in this case charged defendant with conspiracy to commit health care fraud and wire fraud, in violation of Title 18, United States Code, Section 1349 (Count 1); health care fraud, in violation of Title 18, United States Code, Section 1347 (Counts 11-12); conspiracy to pay and receive unlawful kickbacks, in violation of Title 18, United States Code, Section 371 (Count 14); payments of unlawful kickbacks, in violation of Title 42, United States Code, Section 1320a-7b(b) (Counts 20-21); conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h) (Count 35); visa fraud, in violation of Title 18, United States Code, Section 1546 (Count 36); and conspiracy to commit

forced labor, in violation of Title 18, United States Code, Section 1594(b) (Count 37). The fourth superseding indictment also contained a Forfeiture Allegation.

3. The superseding information in this case charges defendant with two counts of making false statements relating to health care matters, in violation of Title 18, United States Code, Section 1035 (Counts 1-2); and visa fraud, in violation of Title 18, United States Code, Section 1546 (Count 3).

4. Defendant has read the charges against him contained in the fourth superseding indictment and the superseding information, and those charges have been fully explained to him by his attorney.

5. Defendant fully understands the nature and elements of the crimes with which he has been charged.

**Charges to Which Defendant Is Pleading Guilty**

6. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to all counts of the superseding information. In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

**Factual Basis**

7. Defendant will plead guilty because he is in fact guilty of the charges contained in the superseding information. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

a. With respect to Counts 1 and 2 of the superseding information:

On or about November 14, 2012 and December 31, 2012, at Cook County, in the Northern District of Illinois, RICHARD TINIMBANG knowingly and willfully made and caused to made materially false and fraudulent statements in connection with the delivery of payments for health care benefits and services, as further described below.

Beginning in 2007 and continuing through March of 2014, RICHARD TINIMBANG was an owner of Patients First Physical Therapy ("PFPT"). During the same time, RICHARD TINIMBANG was also an owner and Administrator of Josdan Home Health Care and a senior manager of Pathways Home Health Services, which was owned by another member of his family. RICHARD TINIMBANG was responsible for preparing invoices on behalf of PFPT, and submitting those invoices to Josdan and Pathways.

PFPT provided physical therapy services to Medicare beneficiaries who were enrolled at Josdan and Pathways. The two home health care companies included PFPT's services on the bills they submitted to Medicare. Richard Tinimbang submitted PFPT's invoices to the home health care companies, and the home health care companies paid PFPT on a per-visit basis with the funds they received from Medicare. In 2007, 2008, and 2011, RICHARD TINIMBANG signed provider enrollment agreements with the Medicare program. As part of those agreements,

defendant agreed not to knowingly present or cause to be presented any false or fraudulent claim for payment by Medicare, and not to submit claims with deliberate or reckless disregard of their truth or falsity.

In particular, as charged in Count 1 of the superseding information, on or about November 14, 2012, in the Northern District of Illinois, RICHARD TINIMBANG knowingly and willfully caused Pathways to submit to Medicare a claim for a 30-minute physical therapy visit provided to patient J.R. on September 29, 2012. Medicare paid $4,476.25 on the claim. Defendant caused such claim to be submitted even though he knew the service could not have been provided on that date and even though defendant knew he had falsified the medical records related to that service. Defendant knew the service could not have been provided on that date because the physical therapist was in Florida.

In addition, as charged in Count 2 of the superseding information, on or about December 31, 2012, in the Northern District of Illinois, RICHARD TINIMBANG knowingly and willfully caused Josdan to submit to Medicare a claim for a 30-minute physical therapy visit provided to patient L.M. on September 28, 2012. Medicare paid $3,896.97 on the claim. Defendant caused such claim to be submitted even though he knew the service could not have been provided on that date and even though defendant knew he had falsified the medical records related to that service. Defendant knew the service could not have been provided on that date because the physical therapist was in Florida.

b. With respect to Count 3 of the superseding information:

On or about September 13, 2011, in the Northern District of Illinois, Eastern Division, RICHARD TINIMBANG did knowingly present and cause to be presented an application and document required by the immigration laws and regulations prescribed thereunder which contained a false statement, subscribed as true as permitted under the penalty of perjury under Section 1746 of Title 28, United States Code, with respect to a material fact, namely Form I-129, Petition for a Nonimmigrant Worker.

More specifically, on September 13, 2011 RICHARD TINIMBANG submitted forms to the Department of Homeland Security in an effort to obtain an H-1B visa for Individual A. H-1B visas are available to individuals in specialty occupations, which require the use of a highly specialized body of knowledge. The Department of Homeland Security requires that Form I-129 be submitted in connection with every application to obtain an H-1B visa.

RICHARD TINIMBANG stated on Form I-129 that Individual A would be employed by Josdan as a business analyst earning $50,066 per year. Defendant knew those statements to be false. He knew the statements were false because he knew that Individual A was not going to be employed by Josdan. Rather, Individual A was going to work as a private assistant to RICHARD TINIMBANG's mother, to assist with her daily activities and needs. Defendant nonetheless signed Form I-129 under the penalty of perjury.

## Maximum Statutory Penalties

8. Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a. Counts 1 and 2 of the superseding information each carry a maximum sentence of 5 years' imprisonment and a maximum fine of $250,000. Defendant further understands that the judge also may impose a term of supervised release of not more than three years for Counts 1 and 2 of superseding information.

b. Count 3 of the superseding information carries a maximum sentence of 10 years' imprisonment. Count 3 also carries a maximum fine of $250,000. Defendant further understands that with respect to Count 3, the judge also may impose a term of supervised release of not more than three years.

c. Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

d. In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

9. Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and

circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

10. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2016 Guidelines Manual.

b. **Offense Level Calculation – Counts 1 and 2 of the superseding information:**

i. The base offense level is 6, pursuant to Guideline § 2B1.1(a)(2).

ii. The loss to Medicare is greater than $6,500 but not more than $15,000. Therefore, pursuant to Guideline § 2B1.1(b)(1)(B), the base offense level is increased by 2 levels.

iii. The defendant abused a position of public trust with the Medicare program in a manner that significantly facilitated the commission or concealment of the offense. Therefore, pursuant to Guideline § 3B1.3, the base offense level is increased by 2 levels.

iv. The parties agree that the offense conduct for Counts 1 and 2 of the superseding information does not involve any other "relevant conduct" within the meaning of Guideline § 1B1.3.

v. The total offense level for Counts 1 and 2 of the superseding information is 10.

c. **Offense Level Calculation – Count 3 of the superseding information:**

i. The base offense level is 11, pursuant to Guideline § 2L2.1(a).

ii. The offense was committed other than for profit. Therefore, the offense level is decreased by 3 levels.

iii. The total offense level for Count 36 is 8.

d. **Grouping of Offenses**

i. Counts 1 and 2 of the superseding information are covered by Guideline § 2B1.1. Pursuant to Guideline § 3D1.2(d), these offenses group.

ii. Count 3 of the superseding information is covered by Guideline § 2L2.1. Pursuant to Guideline § 3D1.2(d), Counts 1 and 2 do not group with Count 3.

e. **Combined Offense Level**

i. Counts 1 and 2 of the superseding information are the group of counts with the highest offense level. Therefore, pursuant to Guideline § 3D1.4(a), one unit is added for this group of counts.

ii. Count 3 of the superseding information is two levels less serious than the group including Counts 1 and 2. Therefore, pursuant to Guideline § 3D1.4(a), one additional unit is added.

iii. Pursuant to Guideline § 3D1.4(a), the offense level of Counts 1 and 2 is increased by two levels, to 12.

iv. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the government and the Probation Office with all requested financial information relevant to his ability to satisfy any

fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

f. **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

g. **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 10, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 6 to 12 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

h. Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation

officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

11. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

**Agreements Relating to Sentencing**

12. The parties agree that there exist no aggravating or mitigating circumstances of any kind or to any degree that should result in a sentence outside the applicable advisory guideline range. Accordingly, the parties agree not to seek or support, directly or indirectly, any variance from or sentence outside of the applicable guideline range.

13. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does

not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

14. Regarding restitution, defendant acknowledges that the total amount of restitution owed to Medicare is $8,373, minus any credit for funds repaid prior to sentencing, and that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant, together with any jointly liable co-defendants, to make full restitution in the amount outstanding at the time of sentencing.

15. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the government of any material change in economic circumstances that might affect his ability to pay restitution.

16. Defendant agrees to pay the special assessment of $300 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

17. After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the fourth superseding indictment and the prior indictments as to defendant.

## Agreements Relating to Forfeiture

18. The defendant agrees to forfeit all interests in any asset that constitutes the proceeds of his offense that the defendant owns or over which the defendant exercises control, directly or indirectly, as well as any property that is traceable to, derived from, fungible with, or a substitute for such property. The assets subject to forfeiture in this case include, but are not limited to, a money judgment in the amount of $8,373.00, representing the amount of proceeds obtained as a result of Counts 1 and 2 of the superseding information, which money judgment shall be satisfied with the payment of the same amount as restitution, as set forth in paragraphs 13 and 14 above.

19. Defendant agrees to waive all interest in the following assets in any administrative or civil judicial forfeiture proceeding: all assets named in the Forfeiture Allegation of the fourth superseding indictment except for the residence located at 6451 N. Leroy Avenue, Lincolnwood, Illinois (the "Forfeitable Property"). The defendant agrees not to file, on behalf of any individual, corporation or business entity, or to assist others in filing, a claim to the Forfeitable Property in any proceeding, be it civil, administrative, or judicial, that may be initiated related to the Forfeitable Property. The government agrees that it will not initiate any proceeding that seeks the forfeiture of the residence located at 6451 N. Leroy Avenue, Lincolnwood, Illinois.

20. Defendant further agrees to take all steps necessary to assist the government in the recovery and return to the United States of the Forfeitable Property. The defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control and those which are held or controlled by a nominee.

21. The defendant further agrees to waive all constitutional and statutory challenges to forfeiture in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The defendant also waives any failure by the Court to advise the defendant of any applicable forfeiture at the time the guilty plea is accepted as required by Rule 11(b)(1)(J). The defendant agrees to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture proceeding. The defendant understands and agrees that all property covered by this agreement is subject to forfeiture as the proceeds of illegal conduct.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

22. This Agreement is entirely voluntary and represents the entire agreement between the government and defendant regarding defendant's criminal liability in case 14 CR 732.

23. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Department of Justice, Criminal Division, Fraud Section and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

**Waiver of Rights**

24. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a. **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove

prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the fourth superseding indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

b. **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

25. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

**Presentence Investigation Report/Post-Sentence Supervision**

26. Defendant understands that the government in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

27. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the government regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

28. For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the government of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

29. Defendant agrees to cooperate with the government in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the government.

30. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

31. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

32. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on

the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

33. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

34. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

35. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

[This space intentionally blank.]

AGREED THIS DATE: 3/29/17

ANDREW WEISSMAN
Criminal Division, Fraud Section
U.S. Department of Justice

RICHARD TINIMBANG
Defendant

ALLAN MEDINA
Assistant Chief
BROOKE HARPER
ANDREW TYLER
PATRICK MOTT
Trial Attorneys
Criminal Division, Fraud Section
U.S. Department of Justice

THEODORE POULOS
Attorney for Defendant